**MUCKLESHOOT TRIBE,**
**Plaintiff–Appellant,**

v.

**PUGET SOUND POWER & LIGHT**
**CO., Defendant,**

**City of Auburn, Washington,**
**Defendant–Appellee.**

**No. 87–4210.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1988.

Decided April 27, 1989.

Amended May 22, 1989.

Walter R. Echo–Hawk, Native American Rights Fund, Boulder, Colo., Robert L. Otsea, Jr. and Jeffrey S. Shuster, Office of the Tribal Attys., Auburn, Wash., for plaintiff-appellant.

Michael J. Reynolds and Christopher M. Constantine, Law Office of Michael J. Reynolds, and John B. Bereiter, City Atty., Auburn, Wash., for defendant-appellee.

Before WRIGHT, PREGERSON and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

In 1976, Congress passed the Civil Rights Attorneys' Fees Awards Act ("Fees Act"), 42 U.S.C. § 1988. The Fees Act provides, in relevant part, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Prevailing plaintiffs are normally entitled to fees unless special circumstances render an award unjust. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). The definition of prevailing parties has been expanded to cover civil rights litigants who successfully conclude settlement negotiations. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). The availabili-

ty of fees for successful plaintiffs may be waived as part of the settlement process. *Evans v. Jeff D.*, 475 U.S. 717, 737–38, 106 S.Ct. 1531, 1542–43, 89 L.Ed.2d 747 (1986). *Jeff D.*, however, left unanswered the question of the appropriate standard to apply when a consent decree is silent or ambiguous on the issue of fees. In this case, the district court construed silence in the settlement agreement as a waiver of attorneys' fees. We hold, however, that when a § 1983 dispute is settled after the commencement of litigation, a prevailing plaintiff may sue for reasonable attorneys' fees unless the defendant shows that the plaintiff clearly waived fees as part of the settlement.

## I. *Background*

This appeal stems from a § 1983 action filed by the Muckleshoot Tribe against the Puget Sound Power & Light Company ("Puget Sound") and the City of Auburn ("the City"). The complaint alleged that Puget Sound and the City, acting under color of state law, diverted the water supply of Coal Creek and thereby interfered with a federally protected water right.[1] Shortly after the Muckleshoots filed their second amended complaint in 1982, the plaintiff and the defendants opened settlement talks.

During the course of the negotiations, Auburn proposed several versions of a draft consent decree, at least one of which broached the issue of cost settlement. On

1. Specifically, the Muckleshoots charged that the actions of the defendants interfered with the Tribe's exclusive rights to anadromous fish in the White–Stuck River and its tributaries, including Coal Creek. Appellants premised their claims upon Puget Sound's diversion of water from the White–Stuck to power the generators at the Dieringer Power Plant and upon Auburn's interruption of the normal flow at Coal Creek. The Muckleshoots sought injunctive, declaratory, compensatory, and punitive damages for alleged violations of the Federal Power Act, the Treaties of Medicine Creek and Point Elliot, and Executive Orders of 1857 and 1874.

2. The settlement agreement requires Auburn to provide appellants with 3.9 cubic feet per second of water from Coal Creek for the Tribe's fishery. In addition, Auburn must maintain the equipment for measuring the water flow in the

April 11, 1986, attorneys for the City circulated a consent decree that required the Tribe to "dismiss the above lawsuit with prejudice and without costs to any party." The Muckleshoots rejected this proposal. Six months later, the Muckleshoots and Auburn entered a consent decree which settled the issue of riparian rights but provided only that "the Tribe covenants not to sue the City involving ownership of rights in Coal Creek in the future and dismiss ... [the] ... Third Amended Complaint with prejudice."[2] The decree did not mention costs or attorneys' fees.[3] The Muckleshoots then sued Auburn for $174,592 under the Fees Act.

The district court concluded that the Muckleshoots had waived their right to sue for attorneys' fees because the weight of authority compelled a standard requiring "a civil rights plaintiff to expressly reserve the right to recover attorneys' fees in a settlement agreement in order to avoid a waiver of the fees claim." The Tribe appealed. We reverse.

## II. *Discussion*

### A

In *Evans v. Jeff D.*, 475 U.S. at 737–38, 106 S.Ct. at 1545, the Court held that under appropriate circumstances a district court may refuse to award attorneys' fees to successful § 1983 parties when the consent decree expressly provides for renunciation of such fees.[4]

Creek and aid the Muckleshoots in enhancing the fishing facilities of the Creek.

3. After the parties agreed to the Auburn decree, the Muckleshoots entered into a settlement with Puget Sound. The release contained in the Puget Sound decree was broader. "[T]he Tribe hereby releases and forever discharges Puget ... from any and all known claims, demands, obligations, liabilities and causes of action of any kind ..." No action for attorneys' fees was filed against Puget Sound, and we express no opinion on the effect of the Puget Sound release.

4. The language at issue in *Jeff D.* was clear. "Plaintiffs and defendants shall each bear their own costs and *attorney's fees* thus far incurred, if so approved by the Court." (emphasis added). 106 S.Ct. at 1535, n. 5.

■ We have already strongly suggested that *Jeff D.* permits waiver only when the parties specifically agree to limit or exclude payment for counsel and that an intent to do so "should not be presumed from a silent record." *Wakefield v. Mathews*, 852 F.2d 482, 484 (9th Cir.1988). *See also Ashley v. Atlantic Richfield Co.*, 794 F.2d 128, 138–39 (3d Cir.1986); *El Club Del Barrio v. United Community Corporations*, 735 F.2d 98, 100 (3d Cir.1984). Rather than adopting a rule requiring plaintiffs to reserve a right to sue, we, along with the Third Circuit, have made it clear that any party wishing to foreclose a suit for § 1988 fees must negotiate a provision waiving attorneys' fees. *Wakefield*, 852 F.2d at 484 (citing *Ashley*, 794 F.2d at 137).[5]

■ Moreover, not only must the settlement agreement contain a provision releasing the defendant from fee liability, but it should clearly accomplish that purpose. *See El Club Del Barrio*, 735 F.2d at 99 ("the burden is on the losing party to show that the settlement agreement *clearly* waived the statutory right to attorneys fees") (emphasis added).

■ We normally determine the sufficiency of a fee release by looking to the language in the settlement agreement. We are aware, however, that, in some instances, the parties may intend to release the defendant from attorneys' fees liability but poor draftmanship may frustrate that intent. In such cases, we permit the defendant to go beyond the settlement instrument itself to prove that *both* parties intended that the agreement waive attorneys' fees. *See Brown v. General Motors Corp.*, 722 F.2d 1009, 1012 (2d Cir.1983). The defendant may prevail if it can show

clearly that the parties mutually intended the disputed language in the consent decree to constitute a release of attorneys' fees. *See Wakefield*, 852 F.2d at 484.

B

■ Thus, in determining whether the defendant has met its burden, we look both to the basic rule and to its exception. First, a waiver of attorneys' fees may be established by clear language in the release. If the decree contains an explicit reference to fees or the breadth of the release is so "sweeping" that it necessarily includes attorneys' fees, a waiver may be found. *See Wakefield*, 852 F.2d at 484. Second, if the language in the release is unclear or ambiguous, surrounding circumstances may clearly manifest the intent of the parties that attorneys' fees be waived. If, during the course of negotiations, the plaintiff rejects an explicit fee waiver provision, we are unlikely to construe ambiguous or more limited language in the settlement instrument as a waiver of fee liability. *See id.* (citing *Ashley*, 794 F.2d at 141). Conversely, if the defendant can provide clear evidence that demonstrates that an ambiguous clause was intended by *both* parties to provide for the waiver of fees, then the defendant is absolved of liability.

■ Applying these principles to this case, the appellee has not shown a waiver of attorneys' fees. First, the language of the alleged waiver here is far too vague, imprecise, and narrow to show an explicit waiver. The settlement decree dismisses the amended complaint with prejudice. Appellee contends that, since the complaint included a claim for attorneys' fees, dismissal of the complaint with prejudice waives

---

**5.** The District Court cited cases from several circuits which purportedly apply a rule requiring plaintiffs to reserve expressly a right to recover attorneys' fees. *See Elmore v. Shuler,* 787 F.2d 601 (D.C.Cir.1986); *Young v. Powell,* 729 F.2d 563 (8th Cir.1984); *Brown v. General Motors Corp.,* 722 F.2d 1009, 1011–12 (2d Cir. 1983); *Jennings v. Metropolitan Government of Nashville,* 715 F.2d 1111, 1113–14 (6th Cir.1983). The District Court's reliance on these cases was misplaced. Far from articulating a sweeping rule of waiver, these cases follow a carefully

crafted case-by-case analysis of party intent. In *Brown* and *Jennings,* the panels explicitly rejected a "silence as waiver" formulation. A precise reading of the cases shows that the Second, Sixth, and District of Columbia Circuits have all adopted a test focusing on an examination of all the relevant circumstances, an approach far different from that of the trial court. To the extent that the Eighth Circuit's analysis in *Young* supports the district court's view, we decline to follow it. *See Young,* 729 F.2d at 567 n. 3.

any demand for such compensation. However, most, if not all, civil rights complaints contain a request for fees, and dismissal with prejudice is the common form of settlement. Adoption of the City's rule would eliminate attorneys' fees in almost all § 1983 cases in which the plaintiff failed expressly to reserve a right to seek fees. Such a standard would effectively reinstate the "waiver by silence" rule we have previously rejected.

In *El Club Del Barrio*, a decision which we approved in *Wakefield*, the Third Circuit came to a conclusion similar to the one we reach here. The language of the *El Club* settlement agreement was virtually identical. It provided for dismissal of the underlying action and made no reference to costs or fees. 735 F.2d at 99. The Third Circuit found no waiver. Like the Third Circuit, we conclude that a waiver of attorneys' fees cannot be found from the language of such a settlement agreement alone.[6]

Second, the surrounding circumstances do not show that the parties intended to waive fees. During negotiations, the closest the parties ever came to concluding an agreement for a fee waiver was when the City proposed language specifically settling all "costs".[7] However, even this language was dropped, and the parties settled on the more limited remedy of dismissing the amended complaint with prejudice. No further mention was made of costs or fees. To the extent that the proposed "cost" language may have indicated an intent by the City to commence negotiations on the parties' relative fee liabilities, the omission of the language evidences the Muckle-

shoots' intent not to settle the fees question. The extrinsic evidence thus falls short of clearly establishing the requisite mutual intent.

From the limited scope of the settlement agreement and from the history of the settlement negotiations, we have little trouble in concluding that the City failed to carry its burden of demonstrating that the Muckleshoots released it from liability for attorneys' fees.[8] The case is remanded to the district court to consider any other issues not already disposed of. If there be none, that court should fix the appropriate fee award to the Muckleshoot Tribe.

**REVERSED AND REMANDED**

---

6. In *El Club*, the Third Circuit held that, in the absence of a specific release provision, the defendant would not be permitted to attempt to establish a waiver from the course of negotiations. Subsequently, in *Ashley*, that circuit concluded that the parties' conduct was relevant to the interpretation of an express but ambiguous waiver provision. 794 F.2d at 141 n. 26. We believe that the record of negotiations may be considered as long as there is language in the release that can arguably be construed as a fee waiver.

7. Some courts have construed waiver of "costs" language as manifesting an intent to waive at-

torneys' fees. *Elmore*, 787 F.2d at 603; *Brown*, 722 F.2d at 1012; *Jennings*, 715 F.2d at 1113–14.

8. While ordinarily the factual conclusions of the District Court would bind us absent clear error, we are not so constrained in this case. As the Third Circuit explained in *El Club Del Barrio*, "it is plain from the record that the sole underpinning of the finding is the magistrate's legal conclusion that the parties had a right to rely on the "silence equals waiver" rule. Since that principle is flawed, the finding need not be heeded." 735 F.2d at 100 n. 2.